**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KOWOMA YMPOKA,

      *Plaintiff*,

      v.

UNITED STATES DEPARTMENT OF THE
INTERIOR, *et al.*,

      *Defendants*.

No. 25-cv-00507 (DLF)

**MEMORANDUM OPINION**

Kowoma Ympoka, proceeding *pro se*, brings this action against two Virgin Islands–based defendants and three federal defendants. She alleges that the defendants have forcibly treated her as a U.S. citizen, misclassified her ethnic identity, denied her rights as an indigenous person, and deprived her of property without due process or just compensation. Before the Court are the defendants' motions to dismiss. *See* Dkt. 6; Dkt. 7. For the reasons that follow, the Court will grant in full the federal defendants' motion to dismiss, grant in part the Virgin Islands defendants' motion to dismiss, and transfer Ympoka's claims against the Virgin Islands defendants to the District Court of the Virgin Islands.

**I.    BACKGROUND**

Ympoka is a Virgin Islands resident who disclaims U.S. citizenship. Am. Compl. 1:31–33, 2:36–37, Dkt. 4. Instead, she asserts that she is a citizen of the "Maipuri Arauan Nation" and a "direct indigenous Arawak descendant." *Id.* at 1:34, 3:91. She objects to being classified as an African American, *id.* at 3:70–72, a categorization contrary to her self-asserted indigenous identity as an "American Aborigine descendan[t]," *id.* at 11:313–20.

In 2000, the Virgin Islands Port Authority purchased Ympoka's property to build an extension to the local airport. *See id.* at 14:413–18; Pl.'s Ex. K (Port Authority Correspondence), at 1–2, Dkt. 4-1. Ympoka contends that she received "less than $40,000" from the sale even though her property was "worth $900,000." Am. Compl. 12:361–62.

Ympoka further alleges that, in late 2014 or early 2015, she demanded that the Department of Commerce change her identity to "American Aborigine" in official government records. *See* Pl.'s Ex. E (Commerce Demand Letter), at 3, 30, Dkt. 1-1. The Department apparently responded, promising to "take action to correct the issue[s]." Pl.'s Ex. D (Commerce Resp.), Dkt. 1-1. According to Ympoka, however, no change resulted. *See* Pl.'s Ex. H (Notice of Intent to Tort), at 4, Dkt. 1-1.[1]

In May 2024, the Virgin Islands government filed a Notice and Certificate of Attachment, informing Ympoka that her property would be sold at public auction if she did not pay $19,781.28 in late property taxes, interest, penalties, and fees. *See* Am. Compl. 12:365–67; Pl.'s Ex. L (Notice and Certificate of Attachment), at 1, Dkt. 4-1. She alleges that, because the defendants did not recognize her indigenous identity and rights, she had to secure loans to pay the tax due. *See* Am. Compl. 12:367–13:371.

In January 2025, Ympoka mailed a "Notice of Intent to Tort" to various federal and Virgin Islands government entities and officials, alleging that they were delinquent in changing her classification in government records. *See* Notice of Intent to Tort 1, 4. In February 2025, she filed suit in this Court, naming eight federal and Virgin Islands defendants. *See* Compl., Dkt. 1. The

---

[1] The Court takes judicial notice of the "Notice of Intent to Tort" and other documents that were attached to Ympoka's original complaint and subsequently incorporated by reference in her amended complaint. *See, e.g.*, Am. Compl. 6:159–60, 7:211–12; *see also Webb v. U.S. Veterans Initiative*, 993 F.3d 970, 973 (D.C. Cir. 2021) ("[c]onsidering all of [a] pro se plaintiff's filings together").

Court dismissed the complaint without prejudice under Federal Rule of Civil Procedure 8 and gave Ympoka thirty days to file an amended complaint. *See* Order, Dkt. 3.

In March 2025, Ympoka timely filed an amended complaint, this time naming five defendants. Am. Compl. 1. Two are Virgin Islands–based: (1) the Virgin Islands Government and (2) Governor Albert Bryan. *Id.* Three are federal: (1) the Department of the Interior; (2) Secretary of the Interior Doug Burgum; and (3) the United States. *Id.* She brings claims under the Alien Tort Claims Act; the First, Fifth, and Fourteenth Amendments to the U.S. Constitution; the International Covenant on Civil and Political Rights; the U.N. Declaration on the Rights of Indigenous Peoples; and the common law, *id.* at 12:342–17:511, and seeks monetary, declaratory, and injunctive relief, *id.* at 17:514–18:529.

## II.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim over which the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Because "[s]overeign immunity is jurisdictional in nature," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), claims barred by the United States' sovereign immunity are "subject to dismissal under Rule 12(b)(1)," *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013). When ruling on a Rule 12(b)(1) motion, the Court "must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (citation modified). At the same time, the plaintiff bears the burden of establishing subject matter jurisdiction, *see Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015), and courts must raise obstacles to their jurisdiction *sua sponte*, *see Fort Bend Cnty. v. Davis*, 587 U.S. 541, 548 (2019). "[W]hile complaints filed by *pro se* litigants are held to a less stringent standard than those applied to formal pleadings drafted by lawyers, even a *pro se* plaintiff bears

3

the burden of establishing that the Court has subject matter jurisdiction." *Newby v. Obama*, 681 F. Supp. 2d 53, 55 (D.D.C. 2010) (citation modified).  If the Court determines that it lacks jurisdiction, it must dismiss the claim or action.  Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Rule 12(b)(3) "instructs the court to dismiss or transfer a case if venue is improper or inconvenient in the plaintiff's chosen forum." *Sanchez ex rel. Rivera-Sanchez v. United States*, 600 F. Supp. 2d 19, 21 (D.D.C. 2009); *see* Fed. R. Civ. P. 12(b)(3).  The Court accepts the plaintiff's well-pleaded allegations regarding venue as true and draws all reasonable inferences from those allegations in the plaintiff's favor.  *See Abraham v. Burwell*, 110 F. Supp. 3d 25, 28 (D.D.C. 2015).  "The Court need not, however, accept the plaintiff's legal conclusions as true . . . and may consider material outside of the pleadings." *Id.* (citation modified).  "The plaintiff has the burden to establish that venue is proper since it is his obligation to institute the action in a permissible forum." *Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 414 (D.D.C. 2020) (citation modified), *aff'd*, No. 20-cv-05103, 2021 WL 2525679 (D.C. Cir. June 2, 2021).

Finally, Rule 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012)

4

(citation modified).  The Court need not, however, accept "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts alleged in the pleadings.  *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citation modified).  While adhering to the 12(b)(6) standards, the Court must liberally construe documents filed by *pro se* litigants.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Additionally, the Court must consider a *pro se* plaintiff's complaint "in light of all filings, including filings responsive to [the] motion to dismiss."  *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (citation modified).[2]

## III.    ANALYSIS

### A.    Federal Defendants

The federal defendants move to dismiss the claims against them for lack of subject matter jurisdiction and failure to state a claim.[3]  The Court will grant their motion.

#### 1.    *International Law Claims*

Ympoka first alleges that the federal defendants committed a range of violations of international law and norms, including principles of *jus cogens*, Am. Compl. 12:342–13:371, and multilateral instruments, *see id.* at 14:422–15:451, 16:472–92, 17:496–511.  She appears to bring

---

[2] In November 2025, Ympoka submitted a "Judicial Notice of Adjudicative Facts" after full briefing had concluded on the motions to dismiss.  *See* Pl.'s Judicial Notice 1, Dkt. 15.  While Ympoka did not seek the Court's permission before filing the notice, the Court concludes that it "is helpful to the adjudication of the motion[s] to dismiss" and that the defendants will not be "unduly prejudiced" if the Court grants leave to file.  *Akers v. Beal Bank*, 760 F. Supp. 2d 1, 3 (D.D.C. 2011).  As such, the Court will exercise its discretion to grant Ympoka leave to file the notice, which the Court will consider alongside her other filings.

[3] Although Ympoka represents that she has sued the Secretary in both his official and individual capacities, *see, e.g.*, Am. Compl. 1:13–14; Pl.'s Judicial Notice 5, the Court concludes that she has brought only an official capacity suit, as she effectuated service on the Secretary in his official capacity only, *see* Federal Defs.' Mot. to Dismiss 8 n.3, Dkt. 7; Federal Defs.' Notice Regarding Service 1 n.1, Dkt. 8.  *Contrast* Aff. of Service of Summons 3, Dkt. 5 (proof of service of Secretary by certified mail to the Department of the Interior headquarters), *with* Fed. R. Civ. P. 4(i)(3) (requirements for service of an officer or employee sued individually).

these international law claims under the Alien Tort Claims Act, *see id.* at 12:342–13:371, the International Covenant on Civil and Political Rights, *see id.* at 14:422–15:451, 16:472–92, and the U.N. Declaration on the Rights of Indigenous Peoples, *see id.* at 17:496–511.

To the extent that Ympoka seeks monetary relief for these alleged violations, the Court lacks subject matter jurisdiction over her claims. Neither the multilateral instruments nor the Alien Tort Claims Act waive the United States' sovereign immunity. *See Smith v. Scalia*, 44 F. Supp. 3d 28, 39–40 (D.D.C. 2014) (the International Covenant on Civil and Political Rights and *jus cogens* do not waive sovereign immunity); *Prophet v. United States*, 106 Fed. Cl. 456, 464 (2012) (the U.N. Declaration on the Rights of Indigenous Peoples does not waive sovereign immunity); *Van Hope-el v. U.S. Dep't of State*, No. 18-cv-00441, 2019 WL 295774, at *2–3 (E.D. Cal. Jan. 23, 2019) (same), *aff'd sub nom.*, *Hope-el v. U.S. Dep't of State*, No. 19-15311, 2019 WL 3941181 (9th Cir. June 26, 2019); *Industria Panificadora, S.A. v. United States*, 957 F.2d 886, 887 (D.C. Cir. 1992) (per curiam) (Alien Tort Claims Act does not waive sovereign immunity). And Ympoka has not identified any other waiver relevant to her international law claims.

Insofar as Ympoka seeks equitable relief for alleged violations of international law that sound in tort, the Alien Tort Claims Act does not provide the Court with subject matter jurisdiction over her claims. The Alien Tort Claims Act gives federal district courts jurisdiction over "any civil action by an alien for a tort . . . committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. Ympoka, however, is a U.S. citizen. *See* Pl.'s Ex. J (Ancestral Chart), Dkt. 4-1 (representing that Ympoka was born in 1954 in St. Croix); 8 U.S.C. § 1406 ("[A]ll persons born in [the Virgin Islands] on or after February 25, 1927, and subject to the jurisdiction of the United States, are declared to be citizens of the United States at birth."); *see also Rasul v. Bush*, 542 U.S. 466, 485 (2004) ("[The Alien Tort Claims Act] explicitly confers the privilege of

6

suing . . . on aliens alone.").[4]  And, although Ympoka denies U.S. citizenship, *see, e.g.*, Am. Compl. 2:36–37, 3:97–4:98, 6:181–82, 16:469, and claims that she voluntarily and intentionally gave up her citizenship by swearing formal allegiance to the Maipuri Arauan Nation, Pl.'s Judicial Notice 6, a formal declaration of allegiance to even a legally recognized foreign state, 8 U.S.C. § 1481(a)(2), made within the United States typically effectuates renunciation only if an individual subsequently "takes up a residence outside the United States and its outlying possessions," *id.* § 1483(a).  Because Ympoka has not alleged that she declared allegiance to a formally recognized foreign state while within the United States and later took up residence outside of the United States and its outlying possessions—or that she made such a declaration while outside the United States and its outlying possessions, *see id.* § 1481(a)—she has failed to fulfill the statutory requirements for renunciation.  The Court thus lacks subject matter jurisdiction over her Alien Tort Claims Act claims.

Ympoka also fails to state a claim for equitable relief against the federal defendants under the International Covenant on Civil and Political Rights or the U.N. Declaration on the Rights of Indigenous Peoples.  Even if Section 702 of the Administrative Procedure Act (APA), 5 U.S.C. § 702, waives the United States' sovereign immunity for claims of equitable relief under either instrument, *see Trudeau*, 456 F.3d at 186 ("We have previously, and repeatedly . . . h[eld] that the APA's waiver of sovereign immunity [for equitable relief] applies to any suit whether under the APA or not." (citation modified)), neither provides a cause of action for her claims, *see Standing*

---

[4] The Court understands "Melissa Sylvester," as listed on the Ancestral Chart, to be Ympoka.  *See* Am. Compl. 2:46–47 (referring to Ancestral Chart as "PLAINTIFF'[S] FAMILY TREE"); *see also* Port Authority Correspondence 22 (addressing Melissa Sylvester as co-owner of property at "Plot No. 30B" to be taken by the Port Authority); Am. Compl. 14:413–15 (referring to Plot No. 30B as Ympoka's "tribal property").

*Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 301 F. Supp. 3d 50, 60 (D.D.C. 2018); *Shibeshi v. United States*, 920 F. Supp. 2d 105, 107–08 (D.D.C. 2013).

Lastly, to the extent that Ympoka seeks equitable relief against the federal defendants under the APA itself, that claim also fails. While Ympoka generally alleges that the wrongs she has suffered "emanate from" the federal defendants' "policy formation, classification regimes, and territorial administration," Pl.'s Judicial Notice 4, she alleges discrete actions by only the Virgin Islands defendants, *see, e.g.*, Am. Compl. 12:359–62 ("PLAINTIFF was forced to sell her property by the government of the Virgin Islands."); *id.* at 15:448–51 ("PLAINTIFF was forced to move off PLAINTIFF property in St. Croix, that was demolished by a company working on behalf of DEFENDANT VIUS Port Authority, for an airport expansion."); *id.* at 16:489–92 (similar); *id.* at 17:506–11 (similar). The only gesture towards concrete federal involvement is a reference to a 1957 correspondence from the Department of the Interior about federal land purchases in the Virgin Islands. *See id.* at 12:354–56; Pl.'s Ex. I (Department of Interior Correspondence), at 1–3, Dkt. 1-1. But Ympoka fails to explain how decades-old land purchases by the Department are connected to her current alleged harms. Because Ympoka has not identified any "final agency action" on the part of the federal defendants, *see* 5 U.S.C. § 704, she has failed to state an APA claim on which relief can be granted, *see Del. Valley Reg'l Ctr., LLC v. DHS*, 106 F.4th 1195, 1203 (D.C. Cir. 2024).

### 2.    *Constitutional Claims*

#### i.    First Amendment, Due Process, and Equal Protection Claims

Ympoka further alleges that the federal defendants violated her First Amendment, due process, and equal protection rights by subjecting her to forced removal and citizenship. *See* Am. Compl. 13:375–14:418; *id.* at 13:375–87 (asserting that the defendants infringed her First

Amendment "freedom of expression, religion, and association" by barring her from tribal lands and requiring that she obtain permission and pay fees to access sacred locations); *id.* at 14:409–10 (alleging that she was "denied a fair process before being removed" from her lands); *id.* at 13:399– 14:403 (claiming that the defendants violated her equal protection rights by "forc[ing her] to operate under the auspices of a 14th Amendment citizen . . . which [she] is not").

Insofar as Ympoka seeks damages for these alleged constitutional violations, the Court lacks subject matter jurisdiction over her claims. None of the constitutional provisions on which Ympoka relies waives sovereign immunity for the constitutional injuries she alleges. *See Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 20 (D.C. Cir. 2010); *Navy, Marshall & Gordon, P.C. v. U.S. Int'l Dev.-Coop. Agency*, 557 F. Supp. 484, 488 (D.D.C. 1983). And Ympoka's argument that the Alien Tort Claims Act, the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*, and "international law" waive sovereign immunity, Opp'n to Federal Defs.' Mot. to Dismiss, 5:113– 6:121, Dkt. 9; Pl.'s Judicial Notice 3, are without merit, *see Industria Panificadora*, 957 F.2d at 887 ("The [Alien Tort Claims Act] itself does not provide a waiver of sovereign immunity."); *Smith*, 44 F. Supp. 3d at 40 ("[A] government does not waive sovereign immunity by committing violations of *jus cogens*."); *Meyer*, 510 U.S. at 477–79 ("[T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."); *Zakiya v. United States*, 267 F. Supp. 2d 47, 56 (D.D.C. 2003) ("It is well established that the FTCA does not waive sovereign immunity for constitutional torts that may be committed by the federal government's employees." (citation modified)).

To the extent that Ympoka seeks equitable relief under the Constitution or APA, *see Del. Riverkeeper Network v. FERC*, 895 F.3d 102, 107 (D.C. Cir. 2018); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010); 5 U.S.C. § 702, she has failed to adequately

allege her constitutional claims as to the federal defendants.  She does not allege any facts from which the Court can draw the reasonable inference that the federal defendants have violated her First Amendment rights.  *See* Am. Compl. 13:375–89.  The only factual link between the federal defendants and the alleged violation is that the federal defendants "perpetuated" the guidelines that infringe upon Ympoka's right to access sacred locations, *id.* at 13:388; *see id.* at 13:387–89, but Ympoka does not appear to identify or challenge any guidelines in particular.  The same is true of Ympoka's due process and equal protection claims.  While Ympoka generally alleges that she has been "the subject of forced identity, forced nationality, and forced official oppression under guidelines established by the Congress of the United States of America," *id.* at 14:403–05, she does not point to any specific guidelines, and the government actions that she contests were taken by the Virgin Islands defendants, *see id.* at 14:406–07, 413–18 (alleging that Ympoka is forced to work for "an agency of DEFENDANT VIUS" and identifying "DEFENDANT VIUS Port Authority" as the entity who took "her tribal property").  Furthermore, for the reasons already stated, Ympoka does not allege any facts that link the 1957 letters regarding prior Department of the Interior land purchases to her alleged harms.  As such, the Court cannot "draw [a] reasonable inference" that the federal defendants are liable for the First Amendment, due process, and equal protection violations alleged.  *Iqbal*, 556 U.S. at 678.

ii.      Takings Claim

Ympoka also appears to assert a takings claim, alleging that she "did not receive proper compensation" when the Virgin Islands Port Authority purchased her property to expand an airport.  Am. Compl. 14:413–18.

"The Takings Clause of the Fifth Amendment provides that no 'private property' may 'be taken for public use, without just compensation.'" *Hill v. DOI*, 151 F.4th 420, 432 (D.C. Cir. 2025)

(quoting U.S. Const. amend. V). Accordingly, "[a] taking may occur when the government physically acquires private property for a public use." *Id.* (citation modified). "The presumptive remedy for an alleged federal taking is monetary relief." *Id.*

The Court lacks subject matter jurisdiction over Ympoka's takings claim. While the Tucker Act, 28 U.S.C. § 1491, and Little Tucker Act, *id.* § 1346(a)(2), waive sovereign immunity for takings claims seeking monetary relief, *Clark v. Libr. of Cong.*, 750 F.2d 89, 103 n.31 (D.C. Cir. 1984), the United States Court of Federal Claims has exclusive jurisdiction for takings claims in excess of $10,000 brought against the United States, *see id.*; *E. Enters. v. Apfel*, 524 U.S. 498, 520 (1998); *Jackson v. United States*, 248 F. Supp. 3d 167, 171 (D.D.C. 2017). Ympoka, however, alleges that she received "less than $40,000" for property worth $900,000. Am. Compl. 12:361–62. While Ympoka does not state an amount for damages, she does ask for "compensatory damages." *See id.* at 17:521. Accepting Ympoka's allegations as true, such damages would number more than $860,000—well over the $10,000 jurisdictional threshold.

Furthermore, Ympoka cannot seek equitable relief for her takings claim. "Because monetary compensation under the Tucker Act will generally provide an adequate remedy at law, equitable relief typically is not available for takings claims." *Hill*, 151 F.4th at 433. Rather, a plaintiff seeking equitable relief for a takings claim is "required to make at least some argument as to why remedies at law would be inadequate to compensate [her]." *Id.* Ympoka has not done so here.

        3.     *Common Law Tort Claims*

Finally, Ympoka alleges that the federal defendants committed constructive fraud and identity theft. Am. Compl. 15:454–16:469. The nucleus of her allegations appears to be that the federal defendants intentionally misclassified her and her grandson as U.S. citizens and plan to

incarcerate her grandson with "no evidence." *Id.*  The Court lacks subject matter jurisdiction over these claims.[5]

Insofar as Ympoka seeks monetary relief for these claims, the FTCA provides a limited waiver of sovereign immunity for common law tort claims against the United States.  *See* 28 U.S.C. § 2674.  That waiver, however, is subject to limits.  Two are relevant here.

First, before bringing a tort claim under the FTCA, a plaintiff must exhaust available administrative remedies by "present[ing]" her claim "to the appropriate Federal agency."  *Id.* § 2675(a).  Administrative exhaustion occurs when the agency issues a final denial or remains unresponsive for six months.  *Id.*  Here, Ympoka presented a "Notice of Intent to Tort" to the defendants on January 22, 2025.  *See* Notice of Intent to Tort 14–15.  Even assuming that the "Notice" constituted a valid presentment of Ympoka's administrative claim, Ympoka commenced this lawsuit on February 20, 2025, less than one month later.  *See* Compl.  As such, she has not exhausted her administrative remedies, and any potential FTCA claim remains barred by sovereign immunity.  *See Canuto v. DOJ*, No. 22-cv-03538, 2024 WL 519560, at *2 (D.D.C. Feb. 9, 2024) ("Exhaustion is a jurisdictional requirement, and a plaintiff's failure to heed that clear statutory command warrants dismissal." (citation modified)).

Second, even if Ympoka had exhausted her administrative remedies, the FTCA also claws back sovereign immunity for a subset of torts, including "libel, slander, misrepresentation, [and]

---

[5] The government has submitted a Westfall Certification that certifies that Secretary Burgum "was acting within the scope of his employment as an official of the United States of America at the time of the alleged incidents."  Westfall Certification, Dkt. 7-1.  That certification "constitutes *prima facie* evidence that the [Secretary] was acting within the scope of his employment," and Ympoka has failed to rebut that evidence by alleging any facts that "would establish that the [Secretary's] actions exceed[ed] the scope of his employment."  *Plevnik v. Sullivan*, 146 F.4th 1174, 1182 (D.C. Cir. 2025) (citation modified).  As such, the Court will substitute the United States as a defendant in place of Secretary Burgum for Ympoka's common law tort claims.

deceit." 28 U.S.C. § 2680(h). Identity fraud is a form of libel or slander, *see Clemmons v. DOJ*, No. 06-cv-00305, 2007 WL 1020796, at \*6 (D.D.C. Mar. 30, 2007), and constructive fraud is a form of misrepresentation, *see Cordoba Initiative Corp. v. Deak*, 900 F. Supp. 2d 42, 50 (D.D.C. 2012) ("Constructive fraud includes all the same elements as actual fraud except the intent to deceive."); *United States v. Neustadt*, 366 U.S. 696, 702 (1961) ("deceit" and "misrepresentation" include fraudulent and negligent misrepresentation). Accordingly, even if Ympoka had exhausted her administrative remedies, sovereign immunity would bar her common law tort claims for monetary relief.

To the extent that Ympoka seeks equitable relief for her common law tort claims, *see, e.g.*, Am. Compl. 18:526–27 (asking the Court to "correct [her] identity records to reflect her status as a member of the Maipuri Arauan Nation"), the Court lacks subject matter jurisdiction. Although Ympoka does not appear to identify a cause of action for these claims, her request sounds in the Privacy Act, 5 U.S.C. § 552a, which allows "individuals on whom information is being compiled and retrieved the opportunity to review the information and request that the agency correct any inaccuracies," *Henke v. U.S. Dep't of Com.*, 83 F.3d 1453, 1456–57 (D.C. Cir. 1996); *see* 5 U.S.C. § 552a(g)(1). Like the FTCA, however, the Privacy Act requires a plaintiff to have exhausted her administrative remedies before seeking judicial relief. *See Nagel v. U.S. Dep't of Health, Educ. & Welfare*, 725 F.2d 1438, 1440–41 (D.C. Cir. 1984). In particular, "a party challenging the accuracy of an agency's records must first present the claim to the agency and allow the agency to consider whether the records should be amended." *Hill v. U.S. Air Force*, 795 F.2d 1067, 1069 (D.C. Cir. 1986). If the agency refuses to amend the party's records, the party must seek further agency review of that determination, *see Dickson v. OPM*, 828 F.2d 32, 40 (D.C. Cir. 1987) (citing 5 U.S.C. § 552a(d)(3)), after which the party may seek injunctive relief in district court, *see id.* (citing

13

5 U.S.C. § 552a(g)(1)(A), (2)(A)).  "Exhaustion of these administrative remedies is a prerequisite to bringing civil suit to compel amendment."  *Nagel*, 725 F.2d at 1441; *see Page v. Comey*, 628 F. Supp. 3d 103, 136 (D.D.C. 2022) (finding that such exhaustion is jurisdictional).

Ympoka has not demonstrated that she has exhausted her administrative remedies as to her claims.  She avers that the Department of the Interior "constructive[ly] deni[ed]" her January 2025 "Notice of Intent to Tort" by its "failure to render a final disposition."  Am. Compl. 6:159–60, 167–68.  But that notice was sent to the Department of Commerce, not the Department of the Interior.  *See* Commerce Demand Letter 1, 30.  And, even assuming that the notice did constitute a proper claim to the agency, Ympoka has not demonstrated that she filed a subsequent administrative appeal before filing this suit.  Nor does she allege constructive exhaustion, a theory that courts in this circuit have rejected in the context of the Privacy Act.  *See, e.g.*, *Barouch v. DOJ*, 962 F. Supp. 2d 30, 68 (D.D.C. 2013); *Dickson*, 828 F.2d at 40 ("The statute provides no exemption from administrative review when an agency fails, even by several months, to abide by a deadline, and none is reasonably implied.").

Accordingly, the Court lacks subject matter jurisdiction over Ympoka's constructive fraud and identity theft claims.

### B. Virgin Islands Defendants

The Virgin Islands defendants move to dismiss for improper venue, lack of subject matter jurisdiction, failure to state a claim, and defective service.  *See* Virgin Islands Defs.' Mot. Dismiss 2–9, Dkt. 6.  In the interest of judicial efficiency, the Court will focus on venue and find that transfer is appropriate.  *See Chevron U.S.A. Inc. v. EPA*, 45 F.4th 380, 385 (D.C. Cir. 2022) ("[V]enue . . . is a threshold, non-merits issue that a court can address without first establishing its jurisdiction.").

14

Ympoka asserts that the District is a proper venue under 28 U.S.C. § 1391(b)(2) and (e). *See* Am. Compl. 4:114–17, 4:125–5:129; Opp'n to Virgin Islands Defs.' Mot. Dismiss 6:123–30, Dkt. 10; Pl.'s Judicial Notice 4. Section 1391(b)(2) provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Section 1391(e), in turn, provides that "[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may . . . be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." *Id.* § 1391(e)(1). Where venue is appropriate under § 1391(e), "[a]dditional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party." *Id.* Venue is not proper under either provision.

First, venue is not proper under § 1391(b)(2). The "substantial part of the events" giving rise to Ympoka's claims occurred in the Virgin Islands, where a "substantial part of property that is the subject of th[is] action" is also situated. *Id.* § 1391(b)(2). Both Ympoka's property and the sacred tribal lands from which Ympoka alleges she is barred are in the Virgin Islands. *See* Am. Compl. 13:375–89. Furthermore, Ympoka alleges that it was the "VIUS Port Authority" that purchased her property in the Virgin Islands without due compensation, *id.* at 14:413–18, and the "VIUS TAX OFFICE" that demanded tax payment, *id.* at 12:365–67—acts that she does not contend occurred in the District of Columbia. Ympoka cannot, moreover, "manufacture venue in

15

the District of Columbia," *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993), by alleging that "decisions, policies, and deprivations imposed upon [her] . . . originate from federal oversight headquartered in Washington, D.C.," Opp'n to Virgin Islands Defs.' Mot. Dismiss 6:125–27; *see* Pl.'s Judicial Notice 4.  A plaintiff cannot bring a suit in the District of Columbia simply "[b]y naming high government officials as defendants." *Cameron*, 983 F.2d at 256.  Where, as here, "the only real connection a lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing the officials and administrative process forming the basis for a plaintiff's claims, venue is not appropriate in the District." *Northern v. HHS*, No. 25-cv-02459, 2025 WL 3114336, at *2 (D.D.C. Nov. 6, 2025) (citation modified).

Nor is venue proper under § 1391(e)(1).  The Virgin Islands defendants are not "officer[s] or employee[s] of the United States or any agency thereof," "an agency of the United States," or the United States itself.  28 U.S.C. § 1391(e)(1); *see Gillham v. V.I. Sup. Ct.*, No. 22-cv-00611, 2022 WL 2975469, at *4–5 (N.D. Tex. July 11, 2022); *cf. Blas v. Gov't of Guam*, 941 F.2d 778, 779 (9th Cir. 1991) (finding that the government of Guam is not a federal agency for the purposes of Fed. R. App. P. 4(a)(1)); *Harris v. Boreham*, 233 F.2d 110, 116 (3d Cir. 1956) (finding a municipal government in the Virgin Islands is "a body politic quite different from" the federal government and thus not a federal agency for the purposes of the FTCA); *id.* (finding a Virgin Islands municipal employee is not "an officer or employee of a federal agency").  As such, they may be joined as parties under § 1391(e)(1) only if venue would be proper absent the federal defendants.  *See* 28 U.S.C. § 1391(e)(1); *Lamont v. Haig*, 590 F.2d 1124, 1129 (D.C. Cir. 1978) ("[I]f suit is sought to be maintained not only against a federal defendant embraced within Section 1391(e) but also against an additional person, there must be proper venue as specified in the

pertinent statutes as to each." (citation modified)).  For the reasons already stated, venue is not proper under § 1391(b)(2), and the Court is not aware of any other provision under which venue would be appropriate in the District.

Having determined that venue is improper, the Court will decline to rule on the Virgin Islands defendants' dismissal arguments and will instead transfer Ympoka's claims against the Virgin Islands defendants to the District Court of the Virgin Islands.  *See* 28 U.S.C. § 1406(a); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983) ("The decision whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court."); *James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 15 (D.D.C. 2009) (noting that courts "favor transfer over dismissal" in general and as to *pro se* plaintiffs in particular).

### CONCLUSION

For the foregoing reasons, the Court grants the federal defendants' Motion to Dismiss, Dkt. 7, and dismisses Ympoka's claims against the federal defendants without prejudice.  The Court further grants in part the Virgin Islands defendants' Motion to Dismiss, Dkt. 6, and transfers Ympoka's claims against the Virgin Islands defendants to the District Court of the Virgin Islands. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

March 25, 2026

17